[Civ. No. 3739.   Fourth Dist.   Mar. 14, 1949.]

WILMA B. BEHNEMAN et al., Appellants, v. INTERNA-
TIONAL CEMENTERS, INC. (a Corporation) et al.,
Respondents.

Hoyt Klinck and John L. Flynn for Appellants.

Borton, Petrini, Conron & Borton for Respondents.

BARNARD, P. J.—This is an action for damages arising out of an automobile collision. The plaintiffs have appealed

from the judgment entered in accordance with a jury's verdict for the defendants.

The accident happened about four miles east of Maricopa on a highway called the "Maricopa Cut-off," at a point where an "oiled road" enters the highway from an oil field to the south. The surrounding country is level and open, with no trees, buildings or other obstructions to the view. The Maricopa Cut-off, which runs east and west, is paved and divided into two lanes with "black top" shoulders on the sides. The "oiled road," which comes in from the south, is of general average width, the oiled portion in the center being about 13 feet wide. There is a fence along each side of the "oiled road" and a line of telephone poles along its east side. There was an iron post with a "Richfield sign" 16 feet east of the entrance to the "oiled road." Where the "oiled road" entered the highway there was a well defined "Y" indicating that heavy traffic passed into and from it both to the east and to the west.

The accident happened about 6 p. m. on May 25, 1946. The sky was overcast but visibility was good and the pavement dry. The defendants' truck, which was equipped with a tank and cement mixing and pumping machinery, was proceeding west on this highway. An automobile driven by the plaintiff husband was also traveling west on this highway and approaching the truck. This automobile was towing a trailer loaded with household equipment weighing from 2,000 to 3,000 pounds. The driver of the automobile pulled over into his left lane and attempted to pass the truck while at the same time the driver of the truck was turning south into this "oiled road." The right front corner of the automobile came into contact with the left rear corner of the truck, resulting in considerable damage to the automobile and its occupants, and practically no damage to the truck.

Three witnesses, who were on the "oiled road" a short distance south of the highway, testified as to the surrounding circumstances, in addition to the two drivers. There is evidence that the truck driver looked in his rearview mirrors and saw nothing coming; that he put up his mechanical signal arm for a left turn; that he changed to a lower gear; that he slowed down from about 40 miles an hour to 15 miles an hour; that he again looked in the rearview mirrors just before starting to make the left turn; and that he heard no sound of a horn. There is also evidence that the truck was halfway through the turn when the sound of brakes on the

plaintiffs' car was heard by the other witnesses, and that when that sound was heard the plaintiffs' car was 150 feet down the highway. After the brakes on the plaintiffs' car were applied the tires left skid marks for a distance of 138 feet or, as one witness said, 148 feet leading to the point of impact.

The plaintiffs first contend that the verdict is contrary to the evidence because it clearly appears that the truck driver was negligent, and there is no evidence to support the implied finding that the driver of the automobile was guilty of contributory negligence. ■ Whether the truck driver took proper precautions in looking for approaching traffic before and during the making of this turn into the "oiled road," and whether a sufficient signal was made, were questions of fact for the jury. ■ The question of whether the driver of the automobile was guilty of contributory negligence was purely one of fact and not of law. It presented a number of questions with respect to the speed at which he was traveling, his observation of things which should have been seen, his equipment, the weight of his trailer load and its effect upon his movement, his attempt to pass the truck at this particular place and under the conditions then existing, and the like. While the evidence would have supported a finding that the driver of the truck was negligent, it not only is sufficient to support a contrary finding but it is amply sufficient to support a finding of contributory negligence on the part of the driver of the automobile.

■ ■ It is next contended that the court committed prejudicial error in giving two instructions at the request of the defendants. The first of these informed the jury that section 530 of the Vehicle Code provided, in part, that no vehicle should be driven to the left side of the roadway ". . . when approaching within one hundred feet of or when traversing any intersection . . . ," and the second told the jury that section 529 of this code provided in part that the driver of a motor vehicle may overtake and pass to the right of another vehicle only when the vehicle overtaken is making or is about to make a left turn. With respect to the first of these instructions it is argued that there was no intersection here since this "oiled road" was a private road and the sections of the Vehicle Code apply only to public roads or highways. It is argued that the second of these instructions, in effect, told the jury that the plaintiff husband was not entitled to pass to the left of this truck but should have passed to its right, and that he was, therefore, guilty of contributory negligence.

While plaintiffs' counsel said in his opening statement that this "oiled road" was a private road no serious effort was made to prove that fact. The only evidence in the record concerning the status of this road appears when a worker for an oil company testified that he knew the road because he worked for one of the oil companies. Counsel for plaintiffs then asked: "And who owns that road?" He replied, "It belongs to the oil companies." While this may have been this worker's opinion, no effort was made to establish the actual fact. On the other hand, there is ample evidence in the record, including photographs, to indicate that this road was similar in appearance to ordinary country roads which are publicly owned. It was of similar width, there were fences on the sides, there was a line of telephone poles along one side, it was oiled, it appeared as a well-traveled road, and it had a "Y" effect as it entered the highway. It rather clearly appears that the case was tried on the theory that this was an ordinary intersection. Counsel for the defendants in his opening statement said that the accident happened at "the intersection made by this road to these oil wells." Counsel for plaintiffs asked a motor patrol officer whether there was anything there to indicate that this was an intersection. He replied that there was no sign posted there stating that it was an intersection. Several witnesses referred to it as an intersection and testified as to what occurred in the intersection, the center of the intersection, and the like. After one of these witnesses had thus several times referred to the intersection plaintiffs' counsel asked him "What do you mean by the intersection?" He replied: "That is where the two roads join, right through the center of the white line." The question of whether certain moving pictures, taken immediately after the accident, should be shown to the jury was argued in the absence of the jury. The court then remarked that the last pictures showing "the intersection" of these two roads would show the intersection and the situation "better than it could be described." After the jury returned the pictures were shown and the court said: "The latter part of the film shows the general view of the intersection." It was then stipulated, "that the second series of intersection shots were taken" at a certain time. No objection was made at any time during the trial to the many references thus made to this "intersection" as the scene of the accident.

At the request of the plaintiffs the court also gave an instruction defining an intersection in the language used in

section 86 of the Vehicle Code, and another instruction in the language of section 540 of the Vehicle Code, stating how the driver of a vehicle intending to turn at an intersection shall do so. The court also gave other instructions, embodying the provisions of sections 525, 528 and 540 of the Vehicle Code. These instructions covered, generally, the rules applying to passing to the left and passing to the right, as well as passing at intersections. Nothing in the instructions told the jury that the driver of the automobile should have passed to the right or that he violated the law in failing to do so. The instructions covered the issues as presented by the pleadings and the evidence and no prejudicial error appears in this connection.

The last contention made is that the court erred in instructing the jury that it is the duty of the driver of a motor vehicle to keep his vehicle under such control as to enable him to avoid eventualities that would be anticipated by prudent drivers in a like position; that in determining whether or not this duty was complied with the jury is entitled to take into consideration the mechanical condition of the vehicles, the weight with which they may be loaded, as well as such other conditions as would affect a person of ordinary prudence in a like position; and that it is unlawful to operate on any highway any vehicle or combination of vehicles which is in an unsafe condition, which is not equipped as required by law, or which is not safely loaded. As plaintiffs' counsel concede, a great deal of evidence was produced in an effort to establish negligence on the part of the driver of this automobile, in respect to the loading of the trailer and the braking and mechanical condition of his equipment. While it is argued that this evidence was not sufficient to establish any negligence the question was one for the jury, and no prejudicial error appears in connection with the giving of these instructions.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 12, 1949.